**SOUTH EUCLID (Village) v BILKEY**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13124. Decided Jan 30, 1933

Edward Blythin, Cleveland, for plaintiff in error.
J. L. Vaughn, Cleveland, and E. G. Krauss, Cleveland, for defendant in error.

FARR, J (7th Dist), sitting in place of McGILL, J (8th Dist), with LEVINE, PJ, and LIEGHLEY, J (8th Dist).

LEVINE, J.

It is unnecessary to review the history of this litigation. Suffice to say that other actions were begun by Bilkey. The present action was instituted by him for the collection of his salary at the rate of Two Hundred and Fifty Dollars per month. The trial court entered a judgment for Bilkey for the full amount sued, the court holding first, that the council had no right to change the salary of an elective officer between the date of his election and the time of his taking office, and second, that the ordinance was unreasonable and void.

The first point which entered into the trial court's decision involved an interpretation of §4219 GC, under the heading, "Compensation and Bonds of Officers, Clerks and employes," which reads as follows:

"Council shall fix the compensation and bonds of all officers, clerks and employes in the village government, except as otherwise provided by law. * * * The compensation so fixed shall not be increased or diminished during the term for which any officer, clerk or employe may have been elected or appointed.* * *"

In holding as it did, the trial court relied on the case of Newcomerstown v State ex Blatt, 36 Oh Ap 434, (9 Abs 123), wherein the court held that the council had no power to change the salaries of elected officers between the date of his election and the time of taking office.

The recent case of Holcomb v State ex Coxey, Sr., adopted the same view. It will be found in Ohio Bar Association Reporter, December 26, 1932, page 457. This latter case which centered upon the interpretation of the section above cited, is now before the Supreme Court of Ohio, and we shall for that reason express no opinion as to its interpretation. We shall devote our attention to the point made by the trial court that the ordinance was unreasonable and void.

It will be seen that when the Council passed the various ordinances fixing the salary of the marshal of the village, it acted in pursuance of authority delegated to it by the General Code of Ohio. Generally speaking, courts will not interfere with the exercise of discretion on the part of a village or city council, when such council acts in pursuance of authority delegated to it by the General Code of Ohio. This, however, is subject to the limitation that in exercising such delegated authority the council must bear in mind the purpose of the delegation of authority, namely, to carry on the functions of government.

"The office of marshal is political in its character, and is one of the agencies by which the government of a city or village is conducted. The marshal is a political officer and he is generally regarded as occupying the same office as the chief of police, and he occupies the same relation to the government of a municipality as the sheriff does to his county or a constable to his town." 43 Corpus Juris, §1294.

"Where a statute specifies the duties of marshal and provides that he shall receive the compensation fixed by ordinance, the power of the trustees to fix the salary is absolute, free from judicial interference, subject only to the limitation that the salary cannot be fixed at so low a sum that no competent person can be found to perform the duties of the office." 43 Corpus Juris, §758.

The case of State of Ohio v The Cincinnati Gas, Light and Coke Company, 18 Oh St 262, while not involving the exact question, sheds considerable light on the question of authority delegated by the state legislature to a municipal council. This case involved the question of the delegated authority of city councils to regulate the price of gas. After the court stated that this power so vested in the municipal council must be exercised in good faith and for the purpose for which it was given, the opinion states that if, in the colorable exercise of this power, a majority of the members of the council, for a fraudulent purpose, combine to pass an ordinance fixing the price of gas at a rate which they well know it can not be manufactured and sold without loss, that such an ordinance is invalid.

While the question of good faith does not enter into the present case, yet it seems to us that it sheds considerable light on the entire subject of authority delegated by the

state legislature to the municipal council. The municipal council must exercise such delegated authority with sound discretion and to accomplish the object for which the power is delegated. If the municipal council passes an ordinance to accomplish another object, the power so to do is denied to it by the state.

In the case of **State v Ironton Gas Company, 37 Oh St 43,** syllabus number three concludes with the following statement:

"Where the facts show not a real, but the mere colorable exercise of the authority vested in the council, the ordinance will be held invalid."

In **Thompson et v The City of Cincinnati, 6 Oh Ap, 420,** the court held:

"The power to determine when it is necessary to improve or repair a sidewalk is vested in the council of a city, but this power cannot be exercised in an arbitrary manner regardless of the public necessity or the rights of the property owners. A court of equity will intervene to prevent arbitrary action amounting to a manifest abuse of discretion."

We are of the opinion, based upon the overwhelming weight of authority, that a delegation of power conferred by the state legislature upon the municipal council, must be exercised by such council not only in good faith, but accompanied by sound discretion. Furthermore, that in exercising such delegated authority the municipal council must bear in mind the purpose for which the delegation was so conferred, namely, to carry on the functions of government.

Applying this principle to the present case, we hold that when the legislature conferred power upon the municipal council to fix the salary of the marshal, that such council may proceed to exercise such delegated authority subject to the condition that it is actuated by the purpose for which the authority was delegated, namely, to carry on the functions of government. It is quite clear from the record that when the village council fixed the salary of marshal Bilkey at ten dollars per year, it sought to accomplish by indirection what it could not do directly. Its action amounts virtually to a repeal of the state law which created the office of village marshal. It sought by indirection to accomplish a virtual repeal of the state law which created such office.

We hold that the council has departed from the purpose for which the power to fix the salary of the marshal was conferred upon it by the state legislature, and that such council has no power to so completely ignore the purpose of the law which delegated to it this authority. The action of the council in passing a ten dollar ordinance was a clear abuse of discretion and amounts practically to a defiance of the law which delegated to it the power to fix the salary of the marshal.

Holding as we do, the judgment of the Common Pleas Court will be affirmed.

FARR, J, concurs in judgment.
LIEGHLEY, J, dissents.

LIEGHLEY, J, dissenting.

The judgment should be reversed for the reason that by the terms of §4219 GC, the state delegated to the Village Council the power and authority to pass the salary reduction ordinance under the circumstances existing in manner and form as enacted. The pertinent part follows:

"COMPENSATION AND BONDS OF OFFICERS, CLERKS AND EMPLOYES." —Council shall fix the compensation and bonds of all officers, clerks and employes in the village government, except as otherwise provided by law. * * * The compensation so fixed shall not be increased or diminished during the term for which any officer, clerk or employe may have been elected or appointed. * * *"

Note the phrase 'during the term for which elected or appointed.' What term, if not the two year term of the Marshal beginning January 1st, 1930. If the time from his election on November 5th, 1929, to the end of the term to which he was then elected was intended, appropriate language was readily available to express such intention. But, "during the term" expresses a different meaning.

The law in force at the time the term and service of an officer begins fixes his salary. **Zangerle v State ex, 105 Oh St 650.**

Bilkey was elected to serve during the term embracing the years 1930 and 1931. His salary for that term was fixed by the Village Council at ten dollars per annum on November 20th, 1929. His salary for the term next preceding, theretofore fixed by the Council, was three thousand dollars per annum. This extreme reduction would seem to have been induced by some trickery or intrigue. On the contrary, at the

hearing it was asserted and undisputed that the councilmen were not charged with fraud or bad faith, nor were their motives impugned. The ordinance was the result of a purely political controversy of local concern. The State wisely delegated to the legislative body of each village absolute dominion over its own political and governmental affairs when not in conflict with general laws. Disagreement with its political policies furnishes no justification for judicial interference.

The trial court found for the plaintiff, Bilkey, on the ground that the ordinance was unreasonable. The majority of this court so decided. With this finding, I disagree. Conceding that the reasonableness of the ordinance may be considered in certain salary reduction cases, and only for such purpose, the facts of this case exclude such consideration.

Bilkey drew two hundred and fifty dollars per month as Marshal during the years 1928 and 1929. It was claimed he did nothing for his salary. In argument, counsel confessed and avoided the charge by asserting that Bilkey repeatedly approached the Mayor with requests for assignments of duty, notwithstanding the fact that §4385 GC defines his duties as the peace officer of the village and executive head of the police force under the Mayor. It was stipulated that he did little or no police work during 1928 and 1929, and was seldom about when there was anything to do. It appears that he wielded considerable political influence in the Village until midsummer of 1929. Bilkey and his office then became a political issue.

The only persons concerned in this ordinance are Bilkey and the other citizens of South Euclid. The majority decision supports his cause and repudiates and overrides the will of the citizens of this Village. To render an ordinance unreasonable it would seem that someone should be injured by reason of some subterfuge, or trick, or fraud, or some advantage taken, some concealment, with the result that injustice or inequity is done.

What was the situation in this Village during the Fall of 1929? Bilkey and his conduct of his office was made an issue in the campaign carried on just prior to the November election. Candidates for Council promised to reduce the salary of the Marshal, if re-elected. This was a political issue upon which the campaign was conducted by pamphlet and speechmaking. Bilkey was a candidate then for re-election for Marshal, and knew all about it and

doubtless championed the cause of the opposition. After election, the Council proceeded to fulfill the campaign pledge of the group successful at the polls by passing this salary reduction ordinance.

Now, how is this ordinance unreasonable? Bilkey is vitally interested on the one hand and the majority of the citizens of the Village on the other. This is a purely political question of no concern to anyone but them. Everything occurred in the open. It was a question among themselves about which they had a right to differ,—no fraud, no bad faith, no concealment and no sinister motives involved. Unreasonableness is predicated alone upon the amount of the reduction,—a matter exclusively within the discretion of the Council.

Bilkey qualified for this office with full information. He was not misled and no advantage was taken of him. He knew the salary was ten dollars per annum, and that it was the result of a political contest decided adverse to him.

Viewed in the light of all the circumstances in this case, this ordinance presents not a single feature that will not stand the test of judicial inquiry and decision on the question of reasonableness.